**Mary Ann McGUIRE, Ruth Schiavone and Jean B. Zarella, Plaintiffs**

v.

**Thomas REILLY, et al., Defendants.**

**No. CIV.A. 00–12279–EFH.**

United States District Court, D. Massachusetts.

Oct. 22, 2002.

Thomas M. Harvey, Boston, MA, for Plaintiffs.

Elizabeth K. Frumkin, Patricia Correa, Adam Simms, William W. Porter, Asst. Atty. General Criminal Bureau, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This matter involves Defendants' Motion for Summary Judgment. At issue is the constitutionality, as applied, of the Massachusetts statute, Mass.Gen.L. ch. 266, Section 120E½, that regulates speech-related

---

conduct within eighteen feet of reproductive health care facilities. The specific section of the statute that is challenged imposes both criminal and civil penalties on persons who knowingly approach another person, within six feet of such person, "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling," unless the targeted individual consents to such approach.[1] Exempted from the statute are "persons entering or leaving such facility" and "employees or agents of such facility acting within the scope of their employment."[2] The question is whether the First Amendment rights of the speaker are abridged by the protection the statute, as applied, provides for the unwilling listener.

Plaintiffs Mary Anne McGuire, Ruth Schiavone and Jean B. Zarrella are three private citizens who regularly travel to the sidewalks and public ways in front of and near reproductive health care facilities, attempting to dissuade women from having abortions by engaging in counseling activities, including distributing leaflets and engaging in oral conversations. Plaintiffs allege that their fear of criminal prosecution caused them to be chilled in their exercise of fundamental constitutional rights.

Plaintiffs filed a Complaint praying for a declaration that the Massachusetts statute is facially invalid and seeking an injunction against its enforcement. They alleged that Mass.Gen.L. ch. 266, Section 120E½ is facially unconstitutional because it violates their right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. Specifically, plaintiffs claim three causes of action: (1) a violation of the First Amendment's Freedom of Speech Clause; (2) a violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) a violation of the Due Process Clause of the Fourteenth Amendment. The several named defendants are those state officers empowered to prosecute violators of the laws of the Commonwealth, and are represented by the Attorney General of the Commonwealth of Massachusetts.

The issue originally before this Court was whether, on its face, the statute is unconstitutional in any of the following four respects. First, whether the Act's explicit singling out of reproductive health care facilities indicates that it is a content-based regulation of speech. Second, whether the exemption for certain people, particularly employees and agents of the facilities, represents impermissible governmental protection for one side of the abortion debate, while abridging fundamental free speech rights of the other. Third, whether the process for physically marking the buffer zones amounts to a discriminatory activation provision. Fourth,

---

1. Mass.Gen.L. ch. 266, Section 120E½(b). The statute reads in relevant part: "No person shall knowingly approach another person or occupied motor vehicle within six feet of such person or vehicle, unless such other person or occupant of the vehicle consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of 18 feet from any entrance door or driveway to a reproductive health care facility or within the area within a rectangle not greater than six feet in width created by extending the outside boundaries of any entrance door or driveway to a reproductive health care facility at a right angle and in straight lines to the point where such lines intersect the sideline of the street in front of such entrance door or driveway." *Id.*

This specific section of the statute is ruled severable from the complete statute itself.

2. *See* Section 120E½(b)(1–2). Also exempted are various law enforcement and emergency personnel, and persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility. Section 120E½(b)(3–4).

whether the language of the statute, aimed primarily at oral communications, reveals that its true intent is the suppression of speech rather than any of the four stated purposes.[3]

This Court held the Act, Mass.Gen.L. ch. 266, Section 120E ½, facially unconstitutional because under the Act employees and agents of abortion clinics have the right to express their pro-abortion views within the restricted areas; whereas anti-abortion protestors are prohibited from expressing their anti-abortion views within the same areas. *McGuire v. Reilly*, 122 F.Supp.2d 97 (D.Mass.2000).

The Court of Appeals for the First Circuit held the Act facially constitutional, although the Act accorded differential treatment to the statutory right to express two disparate views on the subject of abortion, on the ground that it promoted public safety, personal security, smooth traffic flow and effective medical services.

The Court of Appeals further ruled that there was no evidence that employees and agents had in fact exercised their statutory right to protest, educate or counsel.[4] *McGuire v. Reilly*, 260 F.3d 36 (1st Cir. 2001). The Court of Appeals stated that if employees and agents do in fact exercise their statutory right to engage in preferential pro-abortion advocacy *"the plaintiffs remain free to challenge the act, as applied, in a concrete factual setting."* [5] *Id.* at 47. (Emphasis supplied)

The plaintiffs contend that the Act is unconstitutional, as applied, on the ground that employees and agents of the abortion clinics do in fact *exercise* their statutory right to engage in preferential pro-abortion advocacy within the restricted areas.

The defendants have moved for summary judgment. Defendants' motion presents the argument that any as-applied constitutional challenge brought by the plaintiffs is unripe and must be rejected at this time. The thrust of their argument is that the State has not yet applied the Act to the plaintiffs in a way that violates the plaintiffs' constitutional rights.[6] Addition-

**3.** Section 1 of S.B. No. 148 reads: "The purpose of this act is to:—(a) increase the public safety in and around reproductive health care facilities; (b) maintain the flow of traffic and prevent congestion around reproductive health care facilities; (c) enact reasonable time, place and manner restrictions to reconcile and protect both the first amendment rights of persons to express their views, assemble and pray near reproductive health care facilities and the rights of persons seeking access to such facilities to be free from hindrance, harassment, intimidation and harm; and (d) create an environment in and around reproductive health care facilities which is conductive to safe and effective medical services, including surgical procedures, for patients."

**4.** This Court had previously found that employees and agents had in fact *exercised* their statutory right to protest, educate or counsel based on their financial and philosophical incentive to so do, their function as volunteer escorts "to help provide safe, unimpeded clin-

ic access for women" (Exhibit 1), and common experience which teaches that a statutory right is ultimately exercised.

**5.** In an "as-applied" challenge, a plaintiff "contends that application of [a] statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional," *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., Rehnquist, C.J., and White, J., dissenting), *denying cert. to* 962 F.2d 1366 (9th Cir.1992), and asks only that the reviewing court declare the challenged statute unconstitutional on the facts of the particular case. *Sanjour v. Environmental Protection Agency*, 56 F.3d 85, 92 n. 10 (D.C.Cir.1995).

**6.** Defendants specifically point out that none of the plaintiffs has been arrested or prosecuted under the Act; that the Attorney General's interpretation of the Act requires evenhanded enforcement of the Act's prohibitions against *all* sides of the abortion debate, including

ally, defendants contend that any mere anticipation plaintiffs may harbor that the Act will not, in the future, be evenhandedly enforced against pro-abortion speech within the restricted areas, is hypothetical in nature and insufficient to challenge the constitutionality of the Act as-applied. Finally, the defendants assert that "private conduct" cannot be attributed to the State in order to make out an action for violation of constitutional rights. Thus, argue defendants, any as-applied challenge plaintiffs might premise on the conduct of private parties, such as clinic employees or agents, does not allege the requisite "state action."

None of defendants' stated bases for opposing plaintiffs' as-applied constitutional challenge to the Act controls here. This Court must proceed in a manner consistent with the First Circuit's opinion in *McGuire*. *McGuire* directs that if clinic employees or agents exercise the right granted them under the Act's exemption to engage in preferential pro-abortion advocacy, plaintiffs are free to challenge the Act, as applied, in a concrete factual setting. The material issue is *not*, for example, that none of the plaintiffs has been arrested or prosecuted under the Act.[7] Rather, it is whether the Act, as applied to a real and concrete factual setting, permits the expression of a pro-abortion viewpoint by clinic employees and agents, while simultaneously prohibiting plaintiffs from articulating an opposing, anti-abortion message within the same restricted areas.

Plaintiffs oppose defendants' motion for summary judgment. Plaintiffs argue that they need not be arrested or prosecuted in order to assert an as-applied constitutional challenge to the Act. Rather, plaintiffs assert that they have a reasonable fear of prosecution under the Act and have been chilled in exercising their First Amendment rights, thereby causing them to suffer present hardship and injury. Plaintiffs claim to face a dilemma between restraining their speech activities or going to jail. In addition, plaintiffs contend that the Attorney General's "interpretation" of the Act as requiring the Act's prohibitions to be enforced against *all* persons in the 18–foot restricted area, including clinic employees and agents, is contrary to the plain language of the Act, is invalid, and not

---

clinic employees and agents; and that such interpretation has been adopted by the Boston and Brookline police departments, both of which have made it their policy to arrest individuals only after issuing a warning to anyone engaging in particular conduct appearing to violate the Act.

7. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 458–59, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (proclaiming it unnecessary that petitioner first expose himself to arrest or prosecution before being entitled to challenge a statute he claims to deter exercise of his constitutional rights; and refusing to preclude issuance of federal declaratory relief where plaintiff brought as-applied challenge to constitutionality of state criminal statute that had not yet been enforced against plaintiff, but where a genuine threat of enforcement existed); *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas · County,* 221 F.3d 1211, 1214 (11th Cir.2000) (overturning district court for improperly declining to hear as-applied pre-enforcement challenge, on grounds that plaintiffs who showed credible threat of prosecution should not be required to await and undergo criminal prosecution as sole means of seeking relief); *Rhode Island Ass'n of Realtors v. Whitehouse,* 199 F.3d 26, 30–31 (1st Cir.1999) ( "In a pre-enforcement challenge to a statute carrying criminal penalties, standing exists when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.' ") (citations omitted); *Auburn Police Union v. Carpenter,* 8 F.3d 886, 902 n. 23 (1st Cir.1993) (noting that although another circuit declined to hear an as-applied pre-enforcement challenge, this Court preferred to consider parties' arguments on the merits rather than "embark upon technicalities").

binding.[8] Finally, and most significantly, plaintiffs have presented evidence that abortion clinic employees or agents have utilized the Act's exemption as a means of engaging in preferential pro-abortion advocacy within the restricted areas. To date, the State has neither arrested nor prosecuted any clinic employee or agent under the Act.

Summary judgment is appropriate only when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000). For a case to be worthy of trial, then, there must be a *"genuine"* issue of *"material"* fact. In this context, a "genuine" issue is one "that a reasonable jury could resolve . . . in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). "Material" means that a contested fact has the potential to change the outcome of the suit under governing law if the dispute over it is resolved in favor of the nonmovant. *Id.* If the nonmoving party fails to show the existence of a genuine issue of material fact, summary judgment may be granted. *Id.*

Plaintiffs have met their burden by showing there is a genuine issue of material fact as to whether clinic employees or agents have engaged in oral protest, education or counseling on the public ways within the restricted areas in front of abortion clinics, and thereby have exercised the rights granted to them under the plain language of the Act's employee and agent exemption. The evidence supports the argument that said exemption is not being enforced in a manner consistent with the Attorney General's interpretation. This Court looks favorably upon the Attorney General's interpretation as an attempt to construe the Act's employee/agent exemption in accordance with the Court of Appeals' opinion in *McGuire,* and provide a framework under which said exemption may be applied without violating the constitutional rights of the plaintiffs.[9] Unfortunately, evidence that the Act is not being enforced consistent with the Attorney General's interpretation suggests a possible pattern of favoritism toward pro-abortion speech within the restricted areas.

Because there is a genuine issue of material fact, this Court will not deny plaintiffs a trial on the merits for an as-applied challenge to the constitutionality of the employee and agent exemption present in Mass.Gen.L. ch. 266, § 120E½.[10] Defen-

---

**8.** The Attorney General's "interpretation" of the Act's employee and agent exemption has been articulated in a variety of ways. For example, the Attorney General's office has (1) sent written letters to law enforcement officials and abortion clinic personnel, (2) conducted explanatory PowerPoint presentations before members of the Boston and Brookline police departments, and (3) engaged in personal conversations with law enforcement and abortion clinic personnel.

**9.** Clinic employees and agents are, of course, authorized under the Act to insure the person-

al safety of the patients within the restricted areas.

**10.** Pursuant to the First Circuit's decision in *McGuire,* this Court shall not entertain any *facial* challenge to the Act's constitutionality. This Court must abide by the decision in *McGuire* that *on its face,* the Act, including its exemptions, is both content-neutral and viewpoint-neutral, and does not on its face violate the Constitution of the United States. The Defendants' Motion for Summary Judgment on the facial challenge is allowed.

dants' motion for summary judgment as to the as-applied challenge to the Act's exemption is denied at this time.

Prior to setting a hearing on the merits to determine whether clinic employees and agents have engaged in oral protest, education or counseling within the restricted areas, the Court extends the discovery period for six months to afford the parties the opportunity to observe whether any such violations are frequent or sporadic and to determine whether the Act's exemption for clinic employees and agents is being applied in accordance with the Attorney General's interpretation.[11]

The subject of abortion raises the most awesome and profound legal and moral questions: when does life begin and who has the authority to terminate it and under what conditions, and more specifically, do the "unborn" have "certain unalienable Rights," and if so, can such rights be limited. For this reason the abortion debate will continue to provoke the clash of robust public discourse in our time.[12] No statute, as applied, should deny either view, pro-abortion or anti-abortion, in this vigorously contested debate equal access to the public forum to exercise its freedom of expression. As Justice Holmes wrote in *Abrams v. United States*, 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (1919),

> [T]he ultimate good desired is better reached by free trade in ideas—that the best test of truth is the power of thought to get itself accepted in the competition of the market.... That at any rate is the theory of our Constitution.

Sound public policy depends on a fully informed citizenry in our representative form of government, and a fully informed citizenry is achieved by a free and equal expression of conflicting ideas. For although this case has been characterized by some as an "abortion" case, it is, in truth, a "free speech" case, and, it is the necessary condition of a healthy and vigorous body politic that there be a full and fair debate on all serious public issues, including the issue of abortion.

Defendants' Motion for Summary judgment as to the as-applied constitutionality challenge to the Act's exemption is denied at this time and the discovery period is extended for a period of six months, and, at the close of which, the Court shall entertain a renewed Motion for Summary Judgment to be filed by defendants on or before May 14, 2003.

SO ORDERED.

---

**11.** During the extended discovery period the Attorney General might exercise his authority to render a policy directive *formally* promulgating his interpretation of the Act.

**12.** When issues are based on conscience and not on expediency, such as those involving life and death, war and peace, genocide, slavery or human rights, the clash of ideas never ceases to resound in the public square until a resolution is finally achieved. Such issues of conscience do not fade into silence over time due to public disinterest or apathy. Henry David Thoreau in his "Civil Disobedience," the manual for groups, such as Martin Luther King's, who wish to awaken the conscience of the people, exhorted his fellow citizens to peacefully confront laws deemed to be morally evil and "not resign (their) conscience to the legislator." Since the opposing views on the abortion issue are both rooted in deeply held beliefs, the debate will long continue. Those who oppose abortion believe that no one has the right to terminate innocent human life; those who support abortion believe that a woman has the right to choose to destroy the fetus within her body.